IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **Lisa D. Brock,** § | |
| § | |
| **Plaintiff,** § | |
| § | **CIVIL ACTION NO. _____** |
| **v.** § | |
| § | |
| **The Kroger Co.,** § | |
| § | |
| **Defendant.** § | |
| § | **JURY DEMANDED** |
| § | |

**PLAINTIFF LISA D. BROCK'S ORIGINAL COMPLAINT AND JURY DEMAND**

COMES NOW, Lisa D. Brock ("Plaintiff"), by and through her counsel, and brings this action against The Kroger Co. ("Defendant" and "Kroger" throughout) for violations of the Family & Medical Leave Act of 1993 (29 U.S.C. §§ 2601 et seq.) and the Fair Labor Standards Act of 1938 (29 U.S.C. § 201). In support of such claims, Plaintiff would show as follows:

**I. JURISDICTION AND VENUE**

1.    This action arises under the Family & Medical Leave Act, 29 U.S.C. §§ 2601, as well as the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1337.

3.    This action properly lies in the Eastern District of Texas, Sherman Division, pursuant to 28 U.S.C. § 1391(b), because the unlawful employment practices alleged below were committed within this judicial district.

**II. PARTIES**

4. Plaintiff Lisa D. Brock is a citizen of the United States and resides in Frisco, Collin County, Texas.

5. Defendant Kroger is a foreign for-profit corporation registered in and doing business in the State of Texas.

6. Brock was at all relevant times an "employee" of Kroger as defined by applicable statutes.

7. Kroger was at all relevant times an "employer" as defined by applicable statute. Kroger is also a covered entity for purposes of the statutes under which these claims are brought.

8. Kroger may be served with summons through service on its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

### III. STATEMENT OF FACTS

9. At the time of her termination, Brock held the title of "associate manager" for Kroger at a store in Frisco, Texas. She worked from on or about October 30, 2006 until she was terminated on or about May 11, 2011. She was reassigned from a recruiter position to the associate manager position in October 2009.

10. From May 2010 until her termination, Brock worked at Kroger Store #561, located at 12221 Custer Road, Frisco, TX 75035 in Collin County.

11. Brock was paid on a salary basis.

12. During one or more weeks of her employment within the past three years, Brock worked more than 40 hours in a workweek.

13. Brock was not paid one-and-a-half times her regular rate of pay despite the fact that she was a non-exempt employee due to the nature of her job duties as performed.

14. On or about January 15, 2011, Brock injured her back in the storage area of the store as she and another employee, Patty Richard, were preparing for the "Super Bowl of Caring."

15. On that date, Brock had to stand on pallets to reach some display items located in the back of a crowded storage area. As she was trying to hand some items to Richard, she lost her balance. The pallet on which she was standing broke, and she twisted her back. Richard witnessed the incident and later provided a written statement.

16. Not long after the incident, Brock's supervisor, Ryan Offield, came over to the two employees. Brock reported the accident to Offield. He heard Brock's report but just walked away, apparently without taking any action. Brock worked the following day but with increasing back pain.

17. On or about January 17, 2011, Brock went to work with a significant amount of back pain. Offield gave her certain duties on the promotional aisle that would, as he claimed, "take care of that back problem" and work the back pain out of her back. By approximately 4:00 p.m. that day, Brock could no longer work with the pain. Brock was given permission to take off the following two days.

18. Brock saw Brian Ardis, D.C. on or about January 20. Dr. Ardis diagnosed Brock with lumbar and thoracic strains. She returned to work on January 21, still in a significant amount of pain.

19. On or about January 24, Brock saw Dr. Ardis again. Dr. Ardis issued a written statement taking Brock off work until January 31.

20. On receipt of Dr. Ardis's statement, Offield sent Brock home because the store had no sedentary work and because, as Offield put it, the store needed to "get its money's worth" from

its employees. Offield further told Brock that if she remained at the store, "you will be a distraction to everyone that sees you and feels sorry for you."

21. On the morning of January 31, Brock saw Dr. Ardis again. Because of her ongoing condition, Dr. Ardis again took Brock off work.

22. Because of pressure from Offield, Brock returned to work on February 5.

23. On or around February 18, Brock was verbally counseled by Offield for not performing her job. She was still in a significant amount of pain. Store manager John Roberts asked to see Brock's restrictions, and Brock provided Dr. Ardis's statement.

24. On or around March 3, Offield complained to Brock that she was only working at less than 70%, and stated that she needed get well, even if her doctors had to "shove electrodes up [her] ass and light them on fire".

25. Apparently, Roberts found out only on March 4 that Brock had been hurt at work. At first, he accused her of misrepresenting that she had been hurt at work. Roberts then complained to Brock that she went to a chiropractor and told her that Kroger would not pay her chiropractor to treat her. At no point had Brock asked for Kroger to pay for anything.

26. Kroger does not subscribe to the Texas workers' compensation system but provides employees with work injury management and care through their chosen network of providers.

27. On or about March 5, Roberts and Brock filled out paperwork to initiate a work injury claim. Roberts instructed Brock to call the caseworker at Sedgwick Claims Management on March 7.

28. On or about March 7, Brock contacted Gayle Mills, the caseworker at Sedgwick Claims Management. Mills instructed Brock to go to a CareNow clinic and ask for physical therapy.

29. The same day, Brock saw a nurse practitioner at CareNow in Frisco. The nurse practitioner prescribed medications and gave Brock a 20-pound lifting restriction. Brock told the nurse practitioner that she could not work under those loose restrictions in her condition, but the nurse practitioner assigned them anyway.

30. Brock's condition worsened over the following two weeks.

31. Brock returned to CareNow, as instructed, on or about March 21. She reported that she was in a lot of pain. This time, she was seen by Dr. Cassandra Shepperd, who issued a 4-hour shift restriction, a 12-pound lifting restriction, a 2-hour walking restriction, a 2-hour standing restriction and a complete restriction on climbing, standing, kneeling, squatting, bending, stooping, pushing and pulling. Dr. Shepperd told Brock that she could not take her off work and that Kroger wanted her back to work. Dr. Shepperd also diagnosed Brock with lumbar and thoracic strains.

32. Brock went to work the following day in unbearable pain. Roberts gave Brock permission to go home and instructed her to call her caseworker. Brock called and left a message for Dr. Shepperd later that day. Brock also called Mills at Sedgwick and asked her for a list of doctors that she could see. Mills hurried Brock off the phone and said she would call her back. She never did.

33. On or about March 23, Brock went back to CareNow and this time saw Dr. Wes Hester. Dr. Hester took Brock off work from March 23 through March 25.

34. On or about March 24, Brock went to see her personal doctor, chiropractor Dr. Ardis. Dr. Ardis expressed that he wanted to take Brock off work for 30 days due to her condition.

35. On or about March 25, Brock returned to CareNow and saw Dr. Shepperd again. Dr. Shepperd prescribed stronger pain medications and told Brock she was going to arrange for an

MRI to be performed.  Dr. Sheppard stated that Brock's treatment would have moved much faster if she had been a patient off the street with insurance and that Care Now could not make Kroger order any treatment but could only recommend it.  A nurse then administered an injection that was only successfully completed on the third stick attempt.  The nurse then requested Brock to sign a non-liability form for an additional injection, which Brock refused. Shepperd took Brock off work through March 28.

36. Brock heard nothing about an MRI.  On or about March 28, Brock contacted Mills at Sedgwick and expressed that she would like to take a leave-of-absence per Dr. Ardis's orders. Brock filled out a Kroger leave-of-absence form requesting leave through April 25, attached Dr. Ardis's note and faxed it to Mills, Roberts as well as District Manager Carol Swindle.  Brock specifically requested leave under the FMLA and stated it was due to her work injury.

37. On or about March 29, Mills contacted Brock and instructed Brock to choose either Kroger-funded CareNow medical care or Brock's personal doctor.  Mills informed Brock that Kroger would not pay for Brock to see her personal doctor.  Brock expressed that she nevertheless wished to use her personal doctor, as she was dissatisfied with the way that CareNow was handling her injury.

38. On or about April 1, Jim Dickinson of Kroger Risk Management sent a letter to Brock informing her that her benefits under the company's injury management plan had been suspended.  By this letter, it appears that the denial was based primarily on Brock's decision to see Dr. Ardis.

39. On or about April 2, Brock received a notice from a nurse case manager at Sedgwick that Brock was scheduled for an evaluation by the medical director, Dr. Melissa Tonn, on April 14.

Brock had no knowledge as to why this evaluation was scheduled or why this doctor was selected to perform the evaluation.

40. On or about April 12, Martha Freitas, a Kroger assistant human resources manager, issued a letter to Brock that stated Brock's leave-of-absence request was denied. The letter went on to state:

> *As you are aware, the company's doctor is not in agreement with the diagnosis of your doctor. We have the right to request a third opinion prior to authorizing your leave of absence, and we plan to exercise that right. The third opinion will be the binding final opinion.*

Ms. Freitas also advised Brock that Kroger would terminate her employment if she did not return to work within five days.

41. On or about April 14, Brock responded by letter to Freitas, requesting Freitas to clarify which company doctor disagreed with any medical diagnosis given to her. Brock informed Freitas that she had been seen by five different doctors by that point in time.

42. On or about May 2, Freitas again corresponded by letter with Brock. Freitas stated that Brock had refused to be seen by the company's providers, and that Kroger had a right to request a third and final binding opinion before authorizing her leave of absence. Freitas again threatened Brock that if she failed to return to work within five days, her employment would be terminated.

43. That same day, Dr. Ardis issued a statement requesting that Brock remain off work through May 31, 2011.

44. On or about May 6, Brock faxed a response to Freitas. In that letter, Brock informed Freitas that a "third opinion" was not appropriate at this time, and that she would be following the instructions in Dr. Ardis's May 2 written statement.

45. On or about May 11, Freitas issued a letter to Brock reminding Brock that her leave-of-absence was denied and notifying her that her employment was terminated. At the time of her termination, Brock had not exhausted 12 weeks of leave for her work-related injury.

## IV. FIRST CAUSE OF ACTION - VIOLATION OF THE FAMILY & MEDICAL LEAVE ACT OF 1993

46. By the allegations described above, Kroger violated Brock's rights under the Family and Medical Leave Act of 1993, 29 U.S.C. §§2601 et seq., including its applicable regulations, by interfering with Brock's right to take protected leave pursuant to the Act through the termination of her employment. Kroger's violations justify an award of damages, including liquidated damages, attorney fees, court costs, pre- and post-judgment interest, and any relief to which Brock may be entitled. Further, the violations committed by Kroger were willful.

## V. SECOND CAUSE OF ACTION - VIOLATION OF FAIR LABOR STANDARDS ACT OF 1938

47. The acts or omissions of Kroger described above in failing to pay Brock one-and-a-half times her regular rate of pay for hours over 40 in a workweek demonstrate violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq., including its applicable regulations. That statute prohibits the denial of overtime compensation for hours worked in excess of forty (40) per workweek for employees who are not exempt from the Act. Brock was a non-exempt employee due to the nature of her job duties as performed. The violations committed by Kroger were committed willfully within the meaning of the Fair Labor Standards Act.

## VI.  REQUEST FOR JURY TRIAL

48. Plaintiff requests a trial by jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

1. The Court assume jurisdiction of this cause and that Defendant be cited to appear;

2. The Court award damages to Plaintiff as specified above;

3. The Court award liquidated damages under the applicable legal standards for each of the statutes under which Plaintiff's claims are brought;

4. The Court award reasonable and necessary attorney fees, expert fees and costs, as provided by law;

5. The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed; and

6. The Court award any such other relief allowed by law and as the Court may find proper.

                Respectfully submitted,

                /s/ Kerry O'Brien

                Kerry V. O'Brien
                Texas Bar No. 24038469

                O'BRIEN LAW FIRM PC
                2901 Bee Cave Rd., Box I
                Austin, Texas 78746
                ko@obrienlawpc.com
                ph (512) 410-1960
                fx (512) 410-6171

                Counsel for Plaintiff
                Lead Attorney